Filed 04/28/25



VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org

CIVIL DIVISION

Case No. 24-CV-01348

---

Mount Abraham Unified School District Board of Directors v. Heather Bouchey

---

## Opinion and Order on the Secretary's Motion to Dismiss

Following an administrative complaint filed by Parent, at the time a resident within the Mount Abraham Unified School District, and an investigation, the Secretary of Education ordered the Individual Education Program (IEP) team responsible for Parent's disabled Child to reconvene and, among other things, modify the IEP to raise the number of 1:1 personal care hours provided to Child to ensure that Child would receive a free and appropriate education (FAPE). At the reconvened meeting, Parent was informed, in direct defiance of the Secretary's order, that personal care hours would not be increased. This prompted Parent to file a second administrative complaint, following which the Secretary again ordered the IEP team to raise Child's personal care hours. The Mount Abraham Unified School District Board of Directors (District) did not comply with the second order. Instead, it filed this suit against the Secretary of Education in her official capacity in an attempt at challenging the any requirement to raise Child's personal care hours.[1]

---

[1] Though at the time suit initially commenced, Parent and Child's interests were directly at stake in this litigation, the District did not include them as parties needed for the just adjudication of the case. *See generally* Vt. R. Civ. P. 19. Due to the outcome of this decision, it is unnecessary to consider the Rule 19 issue further at this time.

Shortly thereafter, Parent and Child moved out of state, at which time Parent and the District were informed by the Agency of Education: "The District no longer has any ability to oversee Student's IEP or participate in its amendments. This change in circumstances removes the District's obligations relating to the other corrective actions ordered. The files for these matters are now closed." The District then supplemented its complaint in this case to account for the changed circumstances but it did not modify the relief sought.

In this action, the District asks the Court to: (a) declare that the Board of Education rule that makes the Secretary's decisions on administrative complaints unappealable is invalid in that respect; (b) declare that the Secretary lacks authority to award specific relief in response to an administrative complaint and is limited to requesting that the IEP team reconsider its decision; and (c) order the Secretary to revise her orders relating to Child accordingly. The District generally cites the Declaratory Judgment Act, 12 V.S.A. §§ 4711–4725, and Vt. R. Civ. P. 75 in support of these claims. In briefing, it clarifies the claim brought under Rule 75 procedure as seeking relief in the nature *certiorari* as opposed to any of the other extraordinary writs.

The Secretary has filed a motion to dismiss. She argues: (a) the controversy is moot now that Parent and Child have left the State; (b) the District failed to exhaust its administrative remedies; and (c) relief in the nature of *certiorari* under Rule 75 is not available in this case. As such, the motion challenges the Court's subject matter jurisdiction.

## I. Procedural Standard

As the Vermont Supreme Court has described, when considering a motion to dismiss for lack of subject matter jurisdiction, "all uncontroverted factual allegations of the complaint [are] accepted as true and construed in the light most favorable to the nonmoving party. A court may consider evidence outside the pleadings." *Mullinnex v. Menard*, 2020 VT 33, ¶ 8, 212 Vt. 432, 438–39 (citations and internal quotations omitted); *see also Conley v. Crisafulli*, 2010 VT 38, ¶ 3, 188 Vt. 11, 14 (court may accept evidence from outside the record to resolve disputes as to jurisdiction).

## II. Analysis

### A. Regulatory Background

Briefly, the underlying rights and obligations at issue in this case are grounded in the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1482, which requires states, such as Vermont, that accept federal funding for the education of disabled children to ensure that those children receive a FAPE. 20 U.S.C. § 1415(a). For IDEA purposes, the District is the local educational agency or LEA. *See* 20 V.S.A. § 1401(19) ("The term [LEA] means a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools."). The Agency of Education is the State educational agency or SEA. *See* 20 U.S.C. § 1401(32) ("The term [SEA] means the State board of education or other agency or officer primarily

responsible for the State supervision of public elementary schools and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law.")

There are two principal mechanisms by which children and parents may seek administrative redress regarding the provision of a FAPE: (1) an informal, speedy "administrative complaint" procedure, *see* 34 C.F.R. §§ 300.151–300.153; and (2) an altogether separate, formal "due process" procedure, *see* 34 C.F.R. §§ 300.500–300.520. "[A]ny party" aggrieved by a determination made following a due process hearing "has the right to bring a civil action with respect to the due process complaint notice requesting a due process hearing." 34 C.F.R. § 300.516.

The administrative complaint and due process complaint procedures are implemented in Vermont regulations as Special Education Rules (Rules) § 2365.1.5 (administrative complaints) and § 2365.1.6 (due process complaint procedure). *See* Code of Vt. Rules 22 000 006. The administrative complaint procedure is truly focused on speed. When such a complaint is filed, it is both investigated and decided by the Secretary within 60 days. None of the ordinary characteristics of due process are available, and there is no right to a hearing. The Secretary's decision on an administrative complaint is not appealable. Rules § 2365.1.5(i).[2] A parent or LEA

---

[2] If the Secretary decides that the LEA is in violation of IDEA or State law, then "the investigation report shall address how to remediate the violation as well as any resulting denial of those services." Rules § 2365.1.5(g); *see also* Dear Colleague Letter dated May 19, 2015 (U.S. Dep't Educ. Off. Spec. Educ.), available at https://www.pattan.net /getmedia/394e4a43-575b-4eab-86f4-07408b2b6e06/deaton.pdf ("Each SEA is responsible for ensuring that all public agencies within its jurisdiction meet the requirements of the IDEA and its implementing regulations, and this responsibility includes ensuring the correction of any identified noncompliance, whether child-specific or systemic. In light of the SEA's general supervisory authority and responsibility under those provisions, SEAs

dissatisfied with the Secretary's decision, however, may file a due process complaint and seek a hearing at which the matter will be considered by an impartial arbiter *de* novo with robust due process safeguards in place. *Id.*; *see also* Rules § 2365.1.6.2(b) ("A parent or an LEA may file a due process complaint on any matters regarding the identification, evaluation, or placement of the child or the provision of a free appropriate public education by sending a written Due Process Complaint Notice to the Secretary with a copy sent to the other party.").

In this case, Parent filed a first administrative complaint and then a second administrative complaint when the District refused to implement fully the Secretary's fist order. No one ever filed a due process complaint.

B.    Mootness

The Secretary argues that this case became moot when Parent and Child moved out of State and the Agency notified the District that it was relieved of any obligations vis-à-vis Parent and Student. "A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case." *Paige v. State*, 2017 VT 54, ¶ 7, 205 Vt. 287, 291. This case arose out of the District's refusal to comply with the Secretary's FAPE orders vis-à-vis Parent and Child. Because the District has no remaining FAPE obligations to Parent and Child, and there is no alleged threat that the Agency of

---

have broad flexibility to determine the appropriate remedy or corrective action necessary to resolve a State complaint in which the SEA has found that the public agency has failed to provide appropriate services to children with disabilities."). Were the Court to address the issue, the District's argument that the Secretary's order is limited to requesting that the IEP team merely reconsider its original decision, would have to overcome those express provisions.

Education intends to take any action against the District, this case would appear to be moot as any relief ordered by this Court would have no impact on the District's FAPE obligations, whether to Parent and Child or the Agency.

The District offers only one reason to explain its position that this case is not moot. It asserts in briefing that Parent could choose in the future to sue it for having failed to provide Child with a FAPE. Although it does not explain its view as to how the Secretary's orders would function in such a lawsuit; presumably, were it to face such a claim, it would prefer that those orders were declared invalid here first.

Though not denominated as such, the District appears to be arguing the collateral consequences "exception" to the mootness doctrine. "This exception is based on the premise that the Court should still consider a case—even if it no longer involves a live controversy—if the action challenged by the appellant will continue to pose negative consequences for the appellant if it is not addressed. It is a natural extension of the concept that '[t]he central question of all mootness problems is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.''" *Paige v. State*, 2017 VT 54, ¶ 15, 205 Vt. 287, 294 (citation omitted). For this exception to apply, though, the anticipated collateral consequence "cannot be purely speculative." *Handy v. Fiske*, 2023 VT 46, ¶ 7, 218 Vt. 634, 635.

In briefing, the District asserts that Parent potentially decide to sue it at some poit in the future. It describes no circumstances to the effect that such a lawsuit has been threatened, is imminent, or is reasonably anticipated at all. It merely suggests that because it never provided the 1:1 personal care hours ordered by the Secretary, it might

be sued. That is pure speculation. It is wholly insufficient for the collateral consequences exception to the mootness doctrine. The case is moot and is dismissed on that basis.

C. Exhaustion of Administrative Remedies

Even if there were some way in which this case is not moot, the District has had an administrative remedy—a due process complaint—available to it all along, and it has never pursued it. As to that matter, the District appears to misperceive the Secretary's argument or the exhaustion doctrine itself. It argues at length that it had no obligation to exhaust the administrative complaint procedure (employed by Parent twice) and never explains why it had no obligation to file a due process complaint.

As the Vermont Supreme Court has explained: "[W]hen administrative remedies are established by statute or regulation, a party must pursue, or 'exhaust,' all such remedies before turning to the courts for relief. This long-settled rule of judicial administration serves the dual purposes of protecting the authority of the administrative agency and promoting judicial efficiency. Therefore, where an agency has jurisdiction to decide an issue, a court will not interfere with the agency's decision-making unless and until all administrative remedies have been invoked." *Jordan v. State Agency of Transp.*, 166 Vt. 509, 511–12 (1997) (citations omitted).

In response to the Secretary's unappealable orders, the District had available to it the due process complaint procedure. That procedure would have permitted the District to test its theories before an impartial arbiter with robust due process protections. There is no dispute that the procedure is available to LEAs. The District simply never pursued it and chose to sue in court instead.

"A party's failure to exhaust administrative remedies permits a court to dismiss the action for lack of subject matter jurisdiction." *Id*. at 511. This is a second reason that the Court lacks subject matter jurisdiction over this case.

Because the Court concludes that it lacks subject matter jurisdiction on those grounds, it is unnecessary to address the additional question of whether the District's claim properly seeks *certiorari* review under Rule 75.[3]

<u>Conclusion</u>

For the foregoing reasons, the Secretary's motion to dismiss is granted.

Electronically signed on Thursday, April 17, 2025, per V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge

---

[3] Review under a writ of *certiorari* allows limited judicial examination of decisions taken by public officers that are quasi-judicial in nature. Our High Court has stated that it is an "extraordinary remedy and one of limited scope and function." *Rhodes v. Town of Woodstock*, 132 Vt. 323, 323-25 (1974). To state a claim for *certiorari* review, the District would need to establish that the intentionally informal, administrative complaint process is, in fact, "quasi-judicial." A "quasi-judicial action 'is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure; and that no one deprived of such rights is bound by the action taken.' *Goddard v. City of Albany*, 684 S.E.2d 635, 638 (Ga. 2009); *see also Frawley v. Police Com'r of Cambridge*, 46 N.E.3d 504, 514 (Mass. 2016) ('[W]hen assessing whether a proceeding is quasi-judicial, we have looked to the form of the proceeding … and the extent to which that proceeding resembles judicial action.' (citation omitted))." *Mead Johnson & Co. v. State*, No. 397-7-19 Wncv, 2019 WL 13061495, at *4 (Vt. Super. Ct. Oct. 28, 2019).

24-CV-01348 Mount Abraham Unified School District Board of Directors v. Heather Bouchey